Filed 1/30/26  P. v. Celaya CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANNY ROBERT CELAYA,<br><br>    Defendant and Appellant. | B336516<br><br>(Los Angeles County<br>Super. Ct. No. KA026961) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Dominguez, Judge.  Affirmed as modified.

Cynthia Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1995, a jury convicted Danny Robert Celaya of second degree robbery, unlawful driving or taking of a vehicle, and evading a police officer with willful disregard for the safety of others. As to the robbery count, the jury also found that a principal was armed with a firearm. The trial court found that Celaya had suffered several prior strikes and had served a prior prison term within the meaning of former Penal Code section 667.5, subdivision (b).[1] The court sentenced Celaya to a total term of 52 years to life as a third strike offender. Following a partial reversal on direct appeal, Celaya's sentence was reduced to 27 years to life.

In 2023, the trial court resentenced Celaya pursuant to section 1172.75. The court struck Celaya's one-year prior prison term enhancement but denied his request to strike the firearm enhancement under section 1385, subdivision (c), and denied his motion to strike his prior strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. On appeal, Celaya argues the trial court abused its discretion by denying these requests. We find no abuse of discretion. Celaya also argues, and the People concede, that the abstract of judgment must be amended to accurately reflect his actual custody credits, and that several fines and fees must be reduced or vacated. We agree and affirm the judgment as modified.

_____

[1] All further undesignated statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### *Underlying Offenses*

We summarize the facts of the underlying offenses from the opinion issued in Celaya's direct appeal. (*People v. Celaya* (Feb. 28, 1997, B100073 [nonpub. opn.] (*Celaya*).) In April 1995, Patrick Richards carried out an armed robbery at a market. Richards obtained money from the market's cash register while Celaya waited outside in a stolen truck. Celaya was the getaway driver. When police officers attempted to stop the truck, Celaya sped away and drove up to 100 miles per hour on the freeway and on residential streets. Eventually, Celaya and Richards were apprehended. Police officers found two guns and ammunition in the truck. Celaya later asked a police officer if she had found "his gun" in the car.

At trial, Richards testified. According to Richards, on the morning of the robbery, he picked Celaya up in the stolen truck. Celaya had a gun he wanted to sell to Richards's brother. As Celaya drove the truck to Richards's brother's home, Richards instructed Celaya to stop at the market. Richards claimed he did not tell Celaya that he was carrying a gun, and he got back into the truck without saying anything about the robbery. When police pulled up behind the truck, Celaya decided to speed away. Only after Richards tossed stolen money out of the truck's window did Celaya ask Richards what was going on. At that point, Richards told Celaya he had robbed the market.

### *Procedural History*

The People charged Celaya with second degree robbery (§ 211; count 1), during which a principal was armed with a firearm (§ 12022, subd. (a)(1)); unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 2); and evading a

peace officer (*id*., § 2800.2; count 3). The information further alleged that Celaya had suffered five prior strike convictions: robbery, two attempted robberies, and two attempted murders, all from the same 1986 case. The information also alleged that Celaya had served two prior prison terms within the meaning of section 667.5, subdivision (b).

In November 1995, a jury found Celaya guilty on all counts and found true the principal gun use allegation. The trial court found the prior conviction and prior prison term allegations true.

The trial court sentenced Celaya to a term of 52 years to life, as follows: (1) 25 years to life on count 1, plus one year for the section 12022, subdivision (a)(1) firearm enhancement and one year for the prior prison term enhancement under section 667.5, subdivision (b); (2) a consecutive 25 years to life on count 2, plus one year for the prior prison term enhancement; and (3) 25 years to life on count 3, plus one year for the prior prison term enhancement. The court stayed imposition of the one-year sentence for the prior prison term enhancement on count 2, and stayed the entire sentence imposed as to count 3. The court struck the remaining section 667.5, subdivision (b) prior prison term enhancement.

Celaya appealed. In an unpublished opinion, a panel of this court concluded the evidence was insufficient to support the trial court's finding that Celaya's convictions for robbery and unlawful driving or taking of a vehicle stemmed from different operative facts and occurred on different occasions. (*Celaya*, *supra*, B100073.) The court therefore stayed the sentence imposed for unlawful driving or taking of a vehicle. (§§ 667, subd. (c), 654.) On remand, the trial court amended the abstract

4

of judgment to reflect the modification, thus reducing Celaya's sentence to an aggregate term of 27 years to life.

After Senate Bill No. 483 (2021–2022 Reg. Sess.) was passed, the California Department of Corrections and Rehabilitation (CDCR) identified Celaya as eligible for resentencing pursuant to section 1172.75. Although it is not included in the record, it appears that Celaya subsequently filed a motion seeking a full resentencing.

In March 2023, the People opposed Celaya's motion, arguing the resentencing should be limited to striking the now-invalid one-year prior prison term enhancement. The opposition recited Celaya's criminal history, which began in 1982, and emphasized that Celaya was on parole when he committed the underlying offenses in 1995. The opposition also provided evidence that Celaya had incurred 20 CDCR rules violations while in prison. In 2020, the parole board denied him parole based on its assessment that he posed an unreasonable risk to public safety. The People attached as exhibits the appellate opinion from Celaya's direct appeal, CDCR rules violations reports, and a transcript from Celaya's 2020 parole hearing.

In his reply, Celaya asserted that striking at least one of his strikes would not endanger public safety. He asked to be sentenced as a second strike offender to a middle term sentence.

In December 2023, in advance of the resentencing hearing, Celaya filed a *Romero* motion. He asked the court to strike one or more of his prior strikes based on his prior convictions for robbery, attempted robbery, and attempted murder. Celaya argued his prior strike convictions were all from the same 1986 case, but he did not otherwise assert arguments based on the nature or facts of the underlying strike offenses. He stressed that

in the 1995 robbery, no one was injured; he was only the driver, and it was his codefendant Richards who had a gun; and he did not know Richards had robbed the market until he drove away.

Celaya also asked the court to consider that he had already spent 28 years in custody as a third strike offender while serving a sentence of 27 years to life.  He described his father's alcoholism and his own childhood behavioral problems, including his affiliation with a gang when he was 9 or 10 years old.  He asserted that he was 29 years old at the time of the offenses and, "at now nearly 57 years of age," he had "likely" aged out of criminality.  Celaya's motion further indicated that he had a substance abuse history dating back to when he was 11 years old, but he had been sober since May 2020 and was participating in Narcotics Anonymous.  Celaya also recounted other rehabilitation efforts, such as his vocational education while in prison.  He described his future employment and sobriety-related plans if released.  The motion also asserted that Celaya's only two *violent* rule violations while in prison occurred more than 25 years earlier, in 1997 and 1998.  He emphasized that he had broken a leg in 2014, due to a calcium deficiency, and now had metal rods implanted in the leg.  Celaya thus argued that striking one or more of his prior strikes was in the furtherance of justice, and he should be resentenced, at most, as a second strike offender.

At the resentencing hearing, the court struck Celaya's section 667.5, subdivision (b) prison prior enhancement and denied his *Romero* motion.  It also denied his request to dismiss the one-year firearm enhancement.

Regarding the *Romero* motion, the court first recognized that dismissal of a prior strike is appropriate only in extraordinary circumstances.  It reasoned Celaya had not met

6

that standard after considering the facts of the underlying 1995 convictions. The court specifically noted that Celaya was the "driver that went on the pursuit and crashed into someone," and that he was on parole at the time. The court also observed that Celaya committed the underlying offenses only 38 days after he had been released from prison after serving time for the 1986 convictions, which included attempted murder. The court acknowledged that Celaya's prior convictions for robbery, attempted robbery, and attempted murder were all from the same case, but emphasized that the attempted murder convictions were "serious offense[s]."

The trial court further considered Celaya's "20 rule violations since he's been in state prison. [The] [m]ost recent violation occurred on June 26th, 2019, and that was a use of a controlled substance . . . . 2016, again use of a controlled substance. 2013, willfully delaying a peace officer. 2011, promotion of gang activity. Celaya was in possession of an address book with . . . Mexican Mafia . . . [¶] names, addresses and was found guilty [on] January 10th of 2012. [¶] In 2010, possession of a deadly weapon . . . he was adjudicated guilty on that . . . . [A] 1987 . . . fighting. 1997 attempted assault on staff.[2] Mutual combat in 1994. Manufacturing alcohol in 1996. '92 physical altercation . . . I know those are a long time ago, but . . . Mr. Celaya is unable to follow the rules while even in custody

---

[2]      As Celaya points out on appeal, the trial court incorrectly stated that Celaya engaged in an attempted assault on staff in 1997. The violation occurred in 1987. The record supports Celaya's assertion that his last rule violation for "any type of violence" occurred in June 1998, when he was cited for battery on an inmate.

7

. . . I find no extraordinary circumstances to strike the strike."
The court reasoned: "The defendant at the time was certainly—
fell within the spirit of the Three-Strikes Legislation, involved in
violent offenses, and had just served state prison for two
attempted murders . . . ." The court also noted that in 2020, a
parole board found Celaya continued to " 'pose an unreasonable
risk to public safety.' "

Regarding Celaya's request to strike the firearm
enhancement under section 1385, the trial court addressed the
mitigating factors enumerated in section 1385, subdivision (c)(2),
and found none applied. The court reasoned: "I see no evidence to
strike the enhancement. The court can refuse to strike an
enhancement not only if the defendant poses a danger to the
community, but also in the interest of justice. The court can look
at the interest of justice factors in and of itself without
considering any future dangerousness, even though the parole
board has determined [Celaya] still poses a reasonable risk of
danger to the community . . . the court will not strike [the firearm
enhancement] and it's a one-year enhancement." The court
concluded by summarizing: "It's not in the interest of justice to
strike the strike and it's not in the interest of justice to strike the
enhancement."

The court reduced Celaya's sentence on count 1 to 26 years
to life after striking the invalid one-year prison prior. It
resentenced Celaya to two years on count 2, and the low term of
16 months on count 3, with both counts remaining stayed. The
court imposed $300 restitution and parole revocation fines, a $90
total criminal conviction fee, and a $120 total court operations
fee.

Celaya timely appealed.

## DISCUSSION

**I.    Section 1172.75 Resentencing**

Effective January 1, 2022, section 1172.75, subdivision (a) invalidated sentence enhancements imposed prior to January 1, 2020, pursuant to subdivision (b) of section 667.5.  With exceptions not relevant here, the statute requires that sentences that include these invalid enhancements be recalled and the defendant resentenced.

Section 1172.75, subdivision (d), provides in relevant part:

"(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety.  Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed.

"(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.

"(3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

Celaya invoked section 1172.75, subdivision (d)(2), to ask the trial court to apply changes in the law regarding the dismissal of sentence enhancements. Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385. (Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c)(1), now provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) provides that in evaluating whether to dismiss an enhancement, "the court shall consider and afford great weight" to evidence of certain enumerated mitigating circumstances.

"It is well established, however, that section 1385, subdivision (c) applies by its terms to a sentence 'enhancement,' but not to a sentence derived from the alternative sentencing scheme of the Three Strikes law." (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 9 [collecting cases].) Rather, "a trial court has the authority to strike prior strikes under section 1385(a) and *Romero* at a section 1172.75 resentencing." (*People v. Rogers* (2025) 108 Cal.App.5th 340, 345 (*Rogers*).) Section 1385, subdivision (a) provides that trial courts may dismiss a criminal action "in furtherance of justice."

We review the trial court's sentencing decision at a section 1172.75 resentencing for an abuse of discretion. (*Rogers*, *supra*, 108 Cal.App.5th at p. 364.) "[S]ection 1172.75, subdivision (d), vests the superior court with broad discretion based on an inherently factual inquiry." (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856–857.) "Under an abuse of discretion standard, ' "we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are

10

correct, and whether its application of the law to the facts was neither arbitrary nor capricious." ' [Citations.]" (*Id*. at p. 857.)

## II. The Trial Court Did Not Abuse Its Discretion in Denying Celaya's *Romero* Motion

### A. Applicable legal principles

" ' "[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court 'conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.' " ' . . . Thus, the Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428.)

When determining whether to dismiss a strike, a court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review a trial court's denial of a *Romero* motion for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375; *People v. Edwards* (2022) 76 Cal.App.5th 523, 528

11

(*Edwards*); *People v. Avila* (2020) 57 Cal.App.5th 1134, 1140 (*Avila*).) This is a challenging standard. " '[B]ecause the circumstances must be "extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack" [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary.' [Citation.]" (*People v. Vargas* (2014) 59 Cal.4th 635, 641 (*Vargas*), quoting *Carmony*, at p. 378.)

Accordingly, "[o]nly in an extraordinary case—where the relevant factors manifestly support the striking of a prior conviction and no reasonable minds could differ—would the failure to strike be an abuse of discretion." (*Edwards*, *supra*, 76 Cal.App.5th at p. 529.) "Examples are where the trial court was unaware of its discretion to dismiss; where the court considered impermissible factors; or where the sentencing norms established by the 'Three Strikes' law produce an arbitrary or patently absurd result. It is not enough to show reasonable people might disagree about whether to strike a prior conviction. There is no abuse of discretion unless the trial court's decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 528; see also *Avila*, *supra*, 57 Cal.App.5th at pp. 1140–1141.)

### B. No abuse of discretion

The trial court denied Celaya's *Romero* motion based on permissible factors, and there is no indication it was unaware of its discretion, relied on impermissible factors, or that its denial was arbitrary or irrational. The trial court correctly considered the nature and circumstances of Celaya's 1995 felonies, stating

that he was the getaway driver who crashed into someone. It also emphasized that Celaya's 1995 felonies occurred soon after he was released on parole. The court acknowledged Celaya's prior strikes were from a single 1986 case, but stated they involved serious offenses, including attempted murder convictions.

The trial court also properly considered Celaya's background, character, and prospects. (*Williams*, *supra*, 17 Cal.4th at p. 161.) The court referenced Celaya's 20 rule violations while in prison, some of which involved gang activity and physical violence. The court acknowledged that the violent infractions had occurred "a long time ago," yet reasoned Celaya's numerous violations demonstrated an inability to follow rules. While the trial court recognized the parole board found Celaya a risk to public safety, its decision did not rest on this finding. Rather, the court found it was not in the "interest of justice" to dismiss a strike, after correctly acknowledging that circumstances must be "extraordinary" to warrant dismissal.

On appeal, Celaya contends the trial court abused its discretion because it did not consider postconviction factors and other evidence he asserts showed that " 'continued incarceration is no longer in the interest of justice.' " We disagree.

The evidence Celaya highlights was in the record, and he presented arguments to the trial court based on that evidence. Celaya's *Romero* motion discussed his current age, his time served, his physical condition, his sobriety, his efforts at rehabilitation, his future employment plans, and that his violent rule violations were long ago. At the hearing, the trial court expressly considered Celaya's argument that his role in the robbery was limited to being the getaway driver. During the

13

hearing, Celaya also emphasized how long ago his strike offenses occurred. The court acknowledged that Celaya's rule violations for violent behavior occurred many years earlier and that he had not incurred a rule violation since 2019. Further, Celaya's age at the time of his 1986 prior strike convictions was clear from the record, as was the amount of time that had passed since his 1995 offenses.

There is no indication in the record that the court disregarded any relevant factor or any of Celaya's arguments. Indeed, the trial court told Celaya directly: "[Defense counsel] argued the reasons in a written motion as to why I should grant that *Romero* motion. I listened to what he had to say. I listened to what the People had to say. I looked at your prior history. I looked at your comportment in state prison. I looked at all the things that the court must look at, and I determined that it's not in the interest of justice to strike the strike and it's not in the interest of justice to strike the enhancement." The "court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary," so "the fact that the court focused its explanatory comments" on only some of the evidence, does not mean that Celaya has "demonstrated that the trial court abused its discretion in denying his motion to strike prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

As we understand his argument, Celaya also contends the trial court improperly failed to consider that, due to various changes in the law since he was convicted of the crimes underlying his prior strikes, if he were tried today on the same facts, he may not have been convicted of crimes that would constitute strike offenses. He cites, for example, the changes in

14

the law effected by Senate Bill Nos. 1437 (2017–2018 Reg. Sess.) and 775 (2021–2022 Reg. Sess.), Supreme Court precedent concerning the kill-zone theory, and Supreme Court cases requiring the dismissal of one strike when two prior strike convictions arise from a single act against a single victim (*Vargas*, *supra*, 59 Cal.4th at pp. 640, 649) or from a single act that harmed two victims (*People v. Shaw* (2025) 18 Cal.5th 1089, 1093).

Celaya did not make these arguments in the trial court or present any information to the court about the factual basis of the prior strike convictions or the legal theories under which he was convicted. We reject Celaya's argument that, in the absence of any defense request, the trial court erred by failing to sua sponte investigate the underlying factual or legal basis of the prior strike convictions. Indeed, Celaya cites no authority, and we are aware of none, to support this claim. Instead, Celaya relies on *People v. Tatlis* (1991) 230 Cal.App.3d 1266, in which the trial court was found to have erred by refusing a defendant's *request* for a probation report, for purposes unrelated to an attempt to undermine the validity of a prior strike. *Tatlis* does not support Celaya's argument that the trial court erred by failing to conduct its own investigation into Celaya's prior strikes when the defense made no such request. (See *People v. Bullock* (1994) 26 Cal.App.4th 985, 990 [on remand for resentencing following appeal, trial court did not abuse its discretion by failing to order updated probation report; defendant did not request report, there was no evidence the trial court acted on incomplete information, and no evidence there was information appellant wanted the court to consider which it did not].)

We further have no basis to conclude that Celaya's trial counsel provided ineffective assistance in failing to request a probation report or to provide the court with historical information about the strikes. The record does not disclose whether defense counsel had information about the prior strikes, or whether that information would have been helpful to Celaya. Further, defense counsel provided the court with significant information about Celaya's background and mitigating circumstances. On appeal, Celaya merely speculates that additional information about the 1986 convictions *may* have offered a basis for the court to consider dismissing one or more of Celaya's strikes. This is insufficient to establish that counsel's performance was deficient or that any deficient performance was prejudicial. (*In re Tellez* (2024) 17 Cal.5th 77, 88.)

Celaya further asserts several arguments based on the remoteness of the strikes, his current amount of time served, and his changed circumstances due to his current age and conduct in prison. The trial court considered these facts. None was dispositive or mandated that the court dismiss the strikes. (See *Williams*, *supra*, 17 Cal.4th at p. 163 [that 13 years passed between strike and current felony was insignificant since defendant did not refrain from criminal activity during that time and "did not add maturity to age"]; *Avila*, *supra*, 57 Cal.App.5th at p. 1144 ["middle-age status alone does not remove [a defendant] from the spirit of the Three Strikes law"].)

Celaya's arguments essentially ask us to reweigh the evidence, which is not this court's role. The trial court here properly considered Celaya's background and prospects, including that two of the strikes were attempted murder convictions, he committed the instant offenses almost

16

immediately after being released on parole for prior crimes, and he had a history of rule violations in custody.  (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906 [defendant's extensive criminal history and parole and probation violations were "strong indication[s] of unwillingness or inability to comply with the law"].)  Even though Celaya proffered evidence of efforts at rehabilitation, the trial court could find the weight of the evidence suggested a lack of reform, well after the age Celaya could be considered a youthful offender.  (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 [presence of mitigating evidence is not enough to render trial court's denial of *Romero* motion an abuse of discretion].)  On the totality of the evidence before it, the trial court reasonably determined Celaya did not fall outside the spirit of the Three Strikes law.

"[A]n appellate court may not substitute its judgment about appropriate sentencing for that of the trial court, but instead must give due regard to the discretion vested in that court. [Citations.]  The appellate court can find a reversible abuse of discretion only if it concludes that no reasonable judge would have agreed with the trial court's decision.  [Citations.]  Unless that standard is met, the appellate court must affirm the decision, even if it ' "might have ruled differently" ' on the *Romero* motion ' "in the first instance." ' [Citation.]"  (*People v. Dain* (2025) 18 Cal.5th 246, 258.)

## III. The Trial Court Did Not Abuse Its Discretion By Declining To Strike Celaya's Firearm Enhancement

Under section 1385, subdivision (c)(1), a court "shall dismiss an enhancement if it is in the furtherance of justice to do so."  The court here considered the mitigating factors enumerated in section 1385, subdivision (c)(2), and found none applied.  It

17

further found that it was not in the interest of justice to dismiss the firearm enhancement for the same reasons it declined to dismiss one or more strikes.

Celaya contends that even though no mitigating circumstances applied under section 1385, subdivision (c)(2), the trial court erred in not dismissing the principal use enhancement for the same reasons it should have dismissed one or more of his prior strikes. For the reasons described above as to the *Romero* motion, Celaya fails to establish the trial court abused its discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)

Celaya also contends that the trial court improperly considered only his current dangerousness, citing *People v. Gonzalez* (2024) 103 Cal.App.5th 215. *Gonzalez* is inapposite. In that case, the court considered the trial court's analysis under section 1385, subdivision (c)(2), which directs that proof of enumerated mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Here, it is undisputed that none of the enumerated mitigating circumstances applied. Further, the trial court explicitly stated its ruling did *not* rest on Celaya's danger to the community— currently or at any time—but on "the interest of justice" as permitted under section 1385, subdivision (c)(1).

Celaya has not established that the trial court applied an incorrect legal standard or abused its discretion in declining to strike the firearm enhancement.[3]

---

[3] Because we find no abuse of discretion, we do not address Celaya's argument that trial court errors violated his federal constitutional right to due process.

18

## IV. The Abstract of Judgment Must Be Amended To Accurately Reflect Celaya's Custody Credits

Celaya asserts, and the People concede, that the trial court miscalculated his actual custody credits at resentencing. We agree with the parties.

Celaya was originally sentenced on December 13, 1995. At that time, the court awarded 240 days of actual custody credits. The amended abstract of judgment issued after the section 1172.75 resentencing reflected total actual custody credits of 9,902 days. However, the parties agree that between December 13, 1995, and the date of his resentencing, December 13, 2023, Celaya accrued 10,228 days of actual custody credit. Thus, Celaya was entitled to 10,468 days of actual custody credit: the 240 days awarded previously for presentence actual custody credit, plus the 10,228 days accrued between the date of the original sentencing and resentencing. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29 [defendant entitled to all actual custody days since arrest, including date of resentencing]; §§ 2900.1, 2900.5, subd. (d).)

The abstract of judgment must be corrected to reflect Celaya's actual custody credits of 10,468 days. (*People v. Hernandez* (2024) 103 Cal.App.5th 981, 993; *People v. Boyd* (2024) 103 Cal.App.5th 56, 74–75.)

## V. The Criminal Conviction and Court Operations Fees Must Be Stricken

We also agree with the parties that the criminal conviction and court operations fees must be stricken.

The trial court imposed a $30 criminal conviction fee on each count pursuant to Government Code section 70373. It also imposed a "court operation fee" of $40 per count pursuant to

section 1465.8, subdivision (a)(1). However, Government Code section 70373 only applies to convictions after the statute's January 1, 2009 effective date. (*People v. Davis* (2010) 185 Cal.App.4th 998, 1000.) Similarly, the court operations fee is only applicable to convictions after the statute's 2003 operative date. (*People v. Alford* (2007) 42 Cal.4th 749, 753, 754.) Because Celaya suffered the convictions in 1995, the criminal conviction and court operations fees must be stricken.

## VI. The Restitution Fine Is Vacated

Celaya argues, and the People agree, that the restitution fine imposed must be vacated pursuant to a recent amendment to section 1465.9. We agree. Effective January 1, 2025, Assembly Bill No. 1186 (Stats. 2024, ch. 805, § 1) amended section 1465.9 to add subdivision (d), providing that any portion of a restitution fine under section 1465.9 that is not paid within 10 years must be vacated. (§ 1465.9, subd. (d) ["Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated."]; *In re Mattison* (2025) 115 Cal.App.5th 1062, 1066.) The restitution fine was originally imposed in 1995, and Celaya was resentenced over 20 years later. We therefore vacate the fine.

## VII. The Parole Revocation Fine Is Reduced

Finally, Celaya asserts, and the People concede, that the parole revocation fine must be reduced from $300 to $200. At Celaya's original sentencing, the statutory minimum restitution fine was $200, and section 1202.45 required the imposition of a parole revocation fine in an equal amount. (Former § 1202.45.) At the resentencing hearing, the court imposed a $300 restitution

20

fine and imposed and stayed a $300 parole revocation fine. However, because the trial court originally imposed a $200 restitution fine, and the court may not impose a more severe punishment on resentencing, we agree with the parties that the stayed parole revocation fine must be reduced to $200, matching the originally imposed restitution fine.

## DISPOSITION

We direct the clerk of the Superior Court to prepare and forward to the Department of Corrections and Rehabilitation amended abstracts of judgment: (1) awarding Danny Celaya 10,228 days of actual custody credit for the period between December 13, 1995, and December 13, 2023, in addition to the 240 days of presentence actual custody credit previously awarded (total 10,468); (2) striking the criminal conviction and court operations fees under Penal Code section 1465.8 and Government Code section 70373; (3) vacating the restitution fine under Penal Code section 1465.9, subdivision (d); and (3) reducing the parole revocation fine to $200. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.